UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SMITH,<br><br>          Plaintiff,<br><br>    v.<br><br>CONSOLIDATED ASSET MANAGEMENT SERVICES (CALIFORNIA) LLC, a California Limited Liability Company; CONSOLIDATED ASSET MANAGEMENT SERVICES CALIFORNIA (O&M), LLC, a California Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>          Defendants. | No.  1:25-cv-01988-KES-CDB<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND WITHOUT PREJUDICE, AND GRANTING DEFENDANTS LEAVE TO AMEND<br><br>Doc. 6 |

Plaintiff David Smith moves to remand this action to the Superior Court of the State of California for the County of Kern, following removal to the federal court by defendants Consolidated Asset Management Services (California), LLC ("CAMS California"), and Consolidated Asset Management Services California (O&M), LLC ("CAMS O&M").  Doc. 6. This matter is suitable for resolution without a hearing pursuant to Local Rule 230(g).  The Court has considered the parties' briefing and, for the reasons explained below, denies Smith's motion to remand without prejudice and grants defendants leave to amend their notice of removal.

1

## I.    BACKGROUND

Smith filed this action against his employers CAMS California and CAMS O&M (collectively "CAMS"), and fictious Doe defendants, in Kern County Superior Court on November 19, 2025, alleging various employment-related violations, including discrimination, retaliation, failure to pay wages, failure to accommodate, and failure to engage in the interactive process under several California statutes and California common law. *See* Doc. 1-1 at 9.

In or about July 2019, Smith began working for CAMS as an operator mechanic II. *Id.* at ¶ 8. On or about January 22, 2025, CAMS placed Smith on a paid leave of absence pending an evaluation by a company physician that Smith was fit for duty. *Id.* at ¶ 9. Upon completing the evaluation, a physician chosen by CAMS determined that Smith should not work until another physician or neurologist determined he was fit to work. *Id.* at ¶ 11. CAMS's human resources business partner, Ana Gutierrez, told Smith about this additional evaluation via email on or about February 13, 2025. *Id.* at ¶ 12. Because he was unable to schedule an appointment with a neurologist until June 30, 2025, Smith was approved for medical leave and continued his leave of absence. *Id.* at ¶ 13. While waiting to see a neurologist, another physician evaluated Smith and diagnosed him with Huntington's Disease on or about May 5, 2025. *Id.* at ¶ 14. Smith met with a neurologist for the first time on or about June 30, 2025. *Id.* at ¶ 15.

On July 23, 2025, Smith's primary care physician provided Smith with a doctor's note clearing him to return to work. *Id.* at ¶ 17. That same day, Smith emailed a copy of the note to CAMS's senior human resources business partner, Treasure Williams. *Id.* at ¶ 18. Later that day, Smith informed Williams that there may have been a misunderstanding when his physician cleared him to return to work, because he needed to complete an electroencephalogram ("EEG") test before his neurologist would clear him to return to work. *Id.* at ¶ 21.

After Smith had the EEG, Smith's neurologist provided a note on September 11, 2025, which cleared Smith to return to work immediately. *Id.* at ¶ 25. Smith emailed Williams a copy of the neurologist's note that same day. *Id.* at ¶ 26. Williams confirmed receipt of the neurologist's note that day and told him that she "will be in touch . . . regarding next steps." *Id.* at ¶ 27.

On September 15, 2025, Smith emailed Williams asking when he could return to work because he had not yet heard back from her. *Id.* at ¶ 29. Williams responded the same day that she "will be in contact . . . regarding next steps." *Id.* at ¶ 30. From September 17, 2025, through September 22, 2025, Smith reached out to Williams three more times asking for an update, but he received either no response or a response that she was traveling for work. *Id.* at ¶¶ 32–36. On September 25, 2025, Smith informed Williams that he would be contacting a lawyer. *Id.* at ¶ 36. On October 3, 2025, CAMS terminated Smith's employment. *Id.* at ¶ 37.

Separately, Smith alleges that during his employment, CAMS forced him to work through his meal and rest breaks, and to use his personal cell phone for work-related tasks without proper compensation. *Id.* at ¶¶ 38–41.

On December 22, 2025, defendants filed a notice of removal to federal court based on diversity jurisdiction. Doc. 1 at ¶ 2. On January 21, 2026, Smith moved to remand on the basis that CAMS California and CAMS O&M are non-diverse parties. Doc. 6 at 2. On February 4, 2026, defendants filed an opposition to the motion to remand, to which Smith replied on February 13, 2026. Docs. 7, 8.

## II.   LEGAL STANDARD

A suit filed in state court may be removed to federal court if the court would have original jurisdiction over the suit. 28 U.S.C. § 1441(a). Removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a). Defendants desiring to remove a civil action to federal court must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). In the notice of removal defendants need only allege that the parties are diverse and that the amount in controversy exceeds $75,000. *See Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008); *see also Acad. Of Country Music v. Cont'l Cas. Co.*, 991 F.3d 1059, 1061 (9th Cir. 2021) (endorsing the holding in *Ellensburg*).

But "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Section 1447(c) "is

3

strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *Acad. Of Country Music*, 991 F.3d at 1061 (quoting *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004).  A federal court must reject jurisdiction and remand the case to state court if there is any doubt as to the right of removal. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).  Nevertheless, when citizenship is at issue, courts have allowed the party asserting diversity jurisdiction the opportunity to demonstrate that the parties are indeed diverse.  *See, e.g.*, *Delay v. Rosenthal Collins Group, LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009) (directing the defendant LLC to submit a jurisdictional statement identifying the citizenship of all its members); *U.S. Liability Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408, 410 (E.D.N.Y. 2020) (ordering the plaintiff to show cause why the case should not be dismissed for lack of subject matter jurisdiction); *Pentair Flow Techs. v. L.I. Dev. Kan. City, LLC*, No. 22-2241, 2022 WL 2290532, at *2 (D. Kan. June 24, 2022) (same).

A court may exercise diversity jurisdiction over a matter when there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a).  For diversity purposes, a person is a citizen of a state if he or she is: (1) a citizen of the United States and (2) domiciled in that state.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  An LLC is a citizen of the state(s) of which its owners or members are citizens.  *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  Further, "because a member of a limited liability company may itself have multiple members . . . the federal court needs to know the citizenship of each 'sub-member' as well." *Delay*, 585 F.33 at 1005.  Thus, "the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be . . . ." *Meyerson v. Showboat Marina Casino P'ship*, 312 F.3d 318, 320 (7th Cir. 2002).[1]

---

[1] As to the Doe defendants, "[i]n determining whether a civil action is removable on the basis of [diversity jurisdiction], the citizenship of defendants sued under fictitous names shall be disregarded." 28 U.S.C. § 1441(b)(1).

4

**III.    ANALYSIS[2]**

While defendants needed only to allege complete diversity in their notice of removal, as plaintiff has put defendants' citizenship into question defendants bear the burden to show that none of their members are California citizens.  As CAMS California and CAMS O&M are the only named, non-fictious parties in this action, removal is proper only if these defendants establish by a preponderance of the evidence that none of their members, or sub-members traced through all layers of member and sub-member unincorporated associations, are California citizens.

In the notice of removal, defendants attached several business registration and tax documents to support their position that CAMS California and CAMS O&M are California citizens.  Doc. 1-1 at 55–63.  Defendants included two statements of information from the California Secretary of State that list Consolidated Asset Management Services (Texas), LLC ("CAMS Texas") as the sole manager or member for both CAMS California and CAMS O&M.[3]  *Id.* at 55, 57.  Defendants also attached a Texas franchise tax public information report that lists Consolidated Asset Management Services, LLC, a Delaware LLC ("CAMS LLC") as the sole owner of CAMS Texas.  *Id.* at 60.  In their opposition to Smith's motion to remand, defendants attached a declaration from CAMS LLC general counsel and secretary, K. Wade Cline, which asserts that "[t]he members (owners) of [CAMS LLC] are three investor LLCs, none of whom have members who are citizens of the State of California."  Doc. 7-1 at ¶ 5.  Defendants do not provide the identity of these investor LLCs, or their members, or, if the members are in turn LLCs, any sub-members.  Accordingly, it is impossible for the Court to ascertain whether the investor LLCs' members are indeed not California citizens.  Thus, defendants fail to establish that there is complete diversity between the parties.

In their opposition, defendants offer to provide redacted or sealed versions of LLC

---

[2] The parties do not dispute the amount in controversy, Smith's California citizenship, or that defendant's notice of removal was timely.

[3] Defendants' declaration of K. Wade Cline inconsistently asserts that Consolidated Asset Management Services, LLC, a Delaware LLC ("CAMS LLC") is the sole member of CAMS O&M.  Doc. 7-1 at ¶ 6(a).

agreements, or request leave to amend the notice of removal. Doc. 7 at 2–3, 5; *see also* Doc. 7-1 at ¶ 8. Courts may grant leave to amend notices of removal where the jurisdictional allegations are not omitted entirely but, rather, are merely defective in form. *See, e.g.*, *Lindley Contours, LLC v. AABB Fitness Holdings, Inc.*, 414 F. App'x 62, 64 (9th Cir. 2011) (granting leave to amend notice of removal where defendant removed on the basis of diversity jurisdiction but failed to allege the citizenship of all members of a LLC). The Court finds it appropriate to grant defendants leave to amend their notice of removal to cure the jurisdictional pleading defect.

## IV. CONCLUSION

Accordingly,

1.   The hearing set for March 2, 2026, is vacated;

2.   Plaintiff's motion to remand, Doc. 6, is denied without prejudice;

3.   Defendants are directed to file an amended notice of removal within fourteen (14) days of the date of service of this order;

4.   Plaintiff shall file his response, if any, to the amended notice of removal, within fourteen (14) days thereafter.

5.   Defendants are advised that failure to timely file an amended notice of removal will result in the Court remanding the case for lack of jurisdiction.

IT IS SO ORDERED.

Dated:   February 27, 2026

_____
UNITED STATES DISTRICT JUDGE

6